IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBORAH MONACO,                          )
         Plaintiff,                    )
                        )
         v.                           )        Case No.:  2:08-CV-2500 KHV
                        )
QUEST DIAGNOSTICS, INCORPORATED,   )
         Defendant.                    )

**PLAINTIFF'S FIRST AMENDED COMPLAINT, DEMAND FOR JURY TRIAL AND
DESIGNATION OF PLACE OF TRIAL**

       Plaintiff Deborah Monaco, by and through her attorneys, McKee & Ireland, L.L.C., and for her First Amended Complaint, Demand for Jury Trial and Designation of Place of Trial states and alleges as follows:

## JURISDICTION & VENUE

       1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1332, diversity of citizenship, and claims in excess of $75,000 exclusive of interest and costs, pursuant to 28 U.S.C. Sec. 1331, and because of a federal question.

       2.    This matter is in excess of the sum of seventy five thousand dollars ($75,000), exclusive of interest and costs.

       3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the State of Kansas, and Defendant is registered to do and is doing business in the State of Kansas, subjecting it to personal jurisdiction in this action and making it a "resident" of this judicial district pursuant to 29 U.S.C. § 1391(c).

       4.    Plaintiff's claims for discrimination and retaliation are based upon Title VII of the Civil Rights Act of 1964, as amended including, but not limited to, 42 U.S.C. §

2000e et. seq., and the Americans with Disabilities Act ("ADA"), as amended, including, but not limited to, 42 U.S.C. § 12111–12117 et. seq and the Family Medical Leave Act ("FMLA").

## PARTIES

5.     Plaintiff Deborah Monaco is a citizen and resident of the State of Missouri with an address of 2203 Quail Creek Drive, Independence, Missouri 64055.

6.     Defendant Quest Diagnostics, Incorporated ("Quest") is a corporation incorporated in Delaware, duly authorized and registered to engage in business, is doing business within the state of Kansas and may be served with notice and summons by serving its registered agent, National Registered Agents, Inc. of KS, 2101 SW 21st Street, Topeka, Kansas 66604.

7.     Plaintiff and defendant are citizens and residents of different states.

## GENERAL ALLEGATIONS

8.     For a number of years Ms. Monaco has suffered from depression and bipolar disorder.

9.     Quest, based in New Jersey, purports to be the nation's leading provider of diagnostic testing, information and services, esoteric testing, including gene-based testing, routine medical testing, drugs of abuse testing, and non-hospital-based anatomic pathology testing.

10.     On November 1, 2005, Quest announced that it had completed the acquisition of LabOne, Inc., headquartered in Lenexa, Kansas. LabOne provided health screening and risk assessment services to life insurance companies, as well as clinical diagnostic testing services to healthcare providers and drugs of abuse testing to

employers.  LabOne operated major laboratories in Lenexa, Kansas, in Cincinnati, Ohio, as well as a state-of-the-art call center in Lee's Summit, Missouri.

11.    On or about December 11, 2002, Ms. Monaco began working for LabOne on the night shift as a Clinical Laboratory Scientist-Certified.

12.    On or about November 1, 2005, when Quest acquired LabOne, Ms. Monaco was employed on the night shift as a Clinical Laboratory Scientist-Certified.

13.    During and throughout 2006, Quest began discriminating and retaliating against Ms. Monaco due to her disabilities.  Starting in early 2006, the defendant, based upon Ms. Monaco's disabilities, created a hostile work environment by, among other things, monitoring her and overly criticizing her job performance.  The behavior of the defendant continued until it forced Ms. Monaco to resume her leave under the Family Medical Leave Act on or about October 14, 2006.

14.    Ms. Monaco's performance assessment dated on or about December 10, 2003, for the period December 9, 2002 to December 9, 2003, shows that Ms. Monaco was performing her job duties.  She was issued a score of 5.9, which Quest defined as, among other things, "good performance with incumbent fulfilling all position requirements" and "on occasion generat[ing] results above those expected of the position."

15.    Ms. Monaco's performance assessment dated on or about January 28, 2005, for the period December 9, 2003 to December 9, 2004, shows that Ms. Monaco was performing her job duties.  She was issued a score of 5.75, which Quest defined as, among other things, "satisfactory".

16.    Ms. Monaco's performance assessment dated on or about March 3, 2006,

for the period December 11, 2004 to December 11, 2005, shows that Ms. Monaco was performing her job duties.  She was issued a score of 6.75, which Quest defined as, among other things, "between satisfactory and commendable" and "[c]onsistently generates results above those expected of the position" and [c]ontributes in a superior manner to innovations both technical and functional."

17.     On or about March 8, 2006, due to her disabilities Ms. Monaco took a leave of absence under the Family Medical Leave Act ("FMLA").

18.     On or about March 8, 2006, Ms. Monaco contacted a manager at Quest and advised him that she needed to take time off to receive treatment for her disabilities.

19.     Prior to her return from her leave of absence, Ms. Monaco requested a reasonable accommodation pursuant to her disabilities, and Ms. Monaco's doctor requested that she be placed on the day shift instead of working the night shift.

20.     On or about May 17, 2006, Quest initiated its process under the Americans with Disabilities Act ("ADA"), whereby it requested supporting documentation from Ms. Monaco's physician in order to implement the accommodation sought. Thereafter, a completed ADA form was returned and communications were had between Quest Diagnostics Health and Disability Services Department and Ms. Monaco's medical provider wherein it was confirmed that due to her disabilities Ms. Monaco required a shift change.

21.     On or about May 20, 2006, Ms. Monaco returned from her leave of absence to the night shift.

22.     Prior to going on leave her hours were 8:00 p.m. to 6:00 a.m.  When she

returned to work after her leave of absence and after requesting a change to day shift, her hours were changed to 10:00 p.m. to 8:00 a.m.

23.     On or about May 24, 2006, Ms. Monaco was offered and she accepted a transfer to day shift.  The transfer to the day shift did not begin until May 30, 2006.

24.     Beginning on or about May 26, 2006, Quest management allegedly began receiving complaints from employees assigned to train Ms. Monaco, as well as those who perform their duties in conjunction with Ms. Monaco, that they had observed some performance issues with respect to Ms. Monaco that they felt needed to be brought to management's attention.

25.     On or about May 26, 2007, while she was still working on the night shift, Quest alleges that it was reported by one of Ms. Monaco's unidentified trainers that she was having trouble thinking, pulling the correct samples for repeats, remembering what centaur she had put samples on and what levels of quality control she had run.  The unidentified trainer further indicated that he wanted to share this information because he was not willing to be held responsible for any incorrect result that was released while he was working with her.

26.     Quest claims that the transfer to the day shift from the night shift was the only accommodation given to Ms. Monaco and required only a slight change in job duties.  The transfer, however, was a significant change in job duties for which Ms. Monaco was provided little or no training.

27.     On or about May 30, 2006, her first day on the day shift, Quest alleges that an unidentified coworker, who worked on a bench near Ms. Monaco, reported that she observed Ms. Monaco take approximately six breaks that were 10 to 15 minutes

each and that she appeared to not be focused on her work.

28.     On or about June 16, 2006, Ms. Monaco dually filed a timely charge of discrimination with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC").   A true and correct copy of said Complaint is attached hereto as Exhibit "A".

29.     On or about July 12, 2006, Ms. Monaco's coworker Jessica Ford, told Ms. Monaco that Jacque Perez had told employees of Quest to watch and monitor Ms. Monaco because she was on medications.

30.     On or about July 12, 2006, Ms. Monaco complained to Carolyn VanWinkle, Quest's Senior Human Resources Generalist, that she felt she was being watched and discriminated against by her supervisor, Jacque Perez, and other Quest employees.   Ms. VanWinkle informed Ms. Monaco that she would investigate her complaint and get back to her.

31.     On or about July 13, 2006, Ms. VanWinkle met with Ms. Perez to discuss Ms. Monaco's allegations.   At that time Ms. Perez claimed that she had allegedly received a complaint from Jessica Ford regarding the manner in which Ms. Monaco was performing her job duties.   As a result of the meeting, Ms. VanWinkle informed Ms. Perez that she was to personally monitor Ms. Monaco.   Ms. VanWinkle did not advise Ms. Monaco that Ms. Perez had been assigned to monitor her.

32.     Quest alleges that while working on the day shift Ms. Perez was having communications with Ms. Monaco's coworkers regarding Ms. Monaco.   Ms. Perez claims that at least two (2) additional coworkers complained about Ms. Monaco's job performance, neither of these alleged complaints were documented or investigated by

the company.

33.    On July 19, 2006, Ms. Perez advised Ms. VanWinkle that Ms. Monaco was still having performance issues despite having allegedly received retraining on tasks that were similar to those that she performed on the night shift.

34.    On or about July 25, 2006, Ms. Monaco went to the manager of the chemistry department, Scott Mattivi, and told him that she was being discriminated and retaliated against due to her disabilities and that human resources was not providing her any support.    Mr. Mattivi told Ms. Monaco that he had heard rumors concerning her medical condition and her disabilities.    Mr. Mattivi further told Ms. Monaco that it was not right for people to discuss her medical condition or her disabilities.

35.    On or about August 2, 2006, Ms. Monaco was given a verbal warning from Ms. Perez due to her alleged performance issues.    This was the first warning that Ms. Monaco received, verbal or otherwise, while working on the day shift.

36.    On or about August 2, 2006, Ms. Monaco was told by a coworker that Quest employees had been told to "babysit" Ms. Monaco.

37.    On or about August 3, 2006, Ms. Monaco called in sick and took the day off.

38.    On or about August 3, 2006, Quest alleges that Jessica Ford lodged a complaint against Ms. Monaco claiming the Ms. Monaco made a threatening phone call to her home.    Specifically, Quest further alleges that Ms. Ford claimed that Ms. Monaco made the following statement regarding their supervisor "that bitch is going to see what happens when she messes with me" and that Ms. Monaco told her that if she told anyone about the conversation she would have to kill her.    Ms. Monaco denied the

allegations.  Other than confronting Ms. Monaco, Quest did not investigate the alleged incident, took no corrective action and failed to document these allegations against Ms. Monaco.

39.     On or about August 16, 2006, Ms. Monaco dually filed a timely charge of discrimination and retaliation with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC").  A true and correct copy of said amended Complaint is attached hereto as Exhibit "B".

40.     On October 14, 2006, due to the discrimination and retaliation from Quest and its employees, Ms. Monaco resumed her leave of absence under the Family Medical Leave Act.

41.     Since October 14, 2006, Ms. Monaco has been on an indefinite leave of absence from Quest.

42.     An indefinite leave of absence is not a reasonable accommodation.

43.     The indefinite leave of absence resulted in Ms. Monaco being constructively discharged by Quest.

44.     Quest has stated "any monitoring of Ms. Monaco's performance, by her co-workers or management was done with the best intentions."

45.     Quest management, supervisors and employees actively monitored Ms. Monaco.

46.     The monitoring of Ms. Monaco subjected her to conditions that were not similar to other individuals in her workplace.

47.     Upon information and belief, Ms. Monaco believes that her medical condition was shared by Quest with her managers, supervisors and/or coworkers.

Quest's publication or dissemination of her personal and protected medical information violated her rights and was done to aid, abet, incite, compel or coerce others into discriminating and/or retaliating against her.

48.     During her employment with Quest, Ms. Monaco satisfactorily performed her job duties and was given promotions and pay increases.  Only after Quest learned that Ms. Monaco had disabilities did the defendant start to allege performance issues.

49.     At the time Ms. Monaco was forced to go onto unpaid leave of absence she was earning approximately $21.53 per hour, bonuses and other fringe benefits.

50.     It was not necessary to inform her coworkers of Ms. Monaco's disabilities, and it was merely a ruse to alienate her.

51.     Quest knew about Ms. Monaco's disabilities, her need for medical treatment and her ongoing medical treatment.

52.     Quest knew about Ms. Monaco's record of disabilities.

53.     Quest perceived Ms. Monaco as having a disability or of being disabled.

54.     Ms. Monaco was forced to go on unpaid indefinite leave of absence due to her disabilities that resulted in her constructive discharge.

55.     Quest discriminated against Ms. Monaco on the basis of her disabilities.

56.     Quest retaliated against Ms. Monaco on the basis of her disabilities.

57.     As a direct and proximate result of Quest's conduct, Ms. Monaco has been found to be medically unable to work and she had to claim disability; it also caused her to require counseling, therapy and hospitalization for, among other things, extreme anxiety, depression, paranoia, sleeplessness, racing thoughts, crying spells, overall decline in functioning, hopelessness and suicidal thoughts.

58.    Ms. Monaco's disabilities were a motivating and/or determining factor in the treatment, discrimination and/or retaliation of Ms. Monaco during her employment.

59.    Ms. Monaco has not attempted to find another job because she has not been medically cleared to work.

60.    Due to her disabilities, Ms. Monaco has been determined to be disabled by the Social Security Administration and receives social security benefits each month.

61.    Ms. Monaco is an individual who has disabilities, is physically impaired and limited in one or more of her major life activities, thus bringing her within the ambit of the Americans' with Disabilities Act, the Civil Rights Act, the Family Medical Leave Act and the Kansas Act Against Discrimination.

62.    Over sixty (60) days have elapsed since the filing of Ms. Monaco's charge alleging unlawful discrimination.

63.    On or about May 20, 2008, after conducting its investigation, the Kansas Human Rights Commission issued a Probable Cause determination finding that:

a.    Quest Diagnostics discriminated against Ms. Monaco based on her disabilities, bipolar disorder and depression;

b.    Quest Diagnostics discriminated against Ms. Monaco based on her record of disabilities, bipolar disorder and depression;

c.    Quest Diagnostics discriminated against Ms. Monaco based on her being regarded as having disabilities, bipolar disorder and depression; and

d.    Quest Diagnostics retaliated against Ms. Monaco based on her disabilities, bipolar disorder and depression.

A true and correct copy of said Case Summary Report is attached hereto as Exhibit "C".

64.    On or about October 9, 2008, Ms. Monaco received her notice of right to sue letter.  A true and correct copy of said Right to Sue Letter is attached hereto as Exhibit "D".

65.    On or about October 17, 2008, the KHRC sent a letter to Ms. Monaco stating that it was dismissing her complaint due to her filing this matter in the federal court.  A true and correct copy of said document is attached hereto as Exhibit "E".

66.    On or about October 21, 2008, Ms. Monaco through counsel requested that the KHRC reconsider its dismissal, and instead, stay the matter until this lawsuit could be resolved or concluded.  A true and correct copy of said document is attached hereto as Exhibit "F".

67.    On November 10, 2008, the KHRC sent a letter to Ms. Monaco acknowledging and denying her petition for reconsideration.  A true and correct copy of said document is attached hereto as Exhibit "G".

68.    Ms. Monaco has fulfilled all conditions precedent to the filing of this action.

69.    Upon information and belief, Quest has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Quest's conduct towards Ms. Monaco was a part of this pattern or practice.

## COUNT I
## AMERICAN'S WITH DISABILITIES ACT

70.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 69 above as though fully set forth herein.

71.    The defendant discriminated against Ms. Monaco due to her disabilities

and her request for reasonable accommodations in an effort to force her back into an indefinite unpaid leave of absence.

72.    Ms. Monaco's indefinite unpaid leave of absence constituted a discriminatory practice in violation of the ADA.

73.    Ms. Monaco's indefinite unpaid leave of absence was not a reasonable accommodation.

74.    Ms. Monaco's disabilities were a determining factor in Quest's discrimination of Ms. Monaco.

75.    Quest was aware of the prohibitions against discrimination such that its actions were willful, entitling plaintiff to an award of liquidated damages.

76.    As a direct and proximate result of Quest's actions in violation of the ADA, plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock options for which plaintiff seeks back pay.

77.    Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

78.    Quest's discrimination of Ms. Monaco was a direct and proximate result of Ms. Monaco's disabilities and her request for reasonable accommodations under the ADA.

79.    Quest's refusal to provide Ms. Monaco with reasonable accommodations and its subsequent punishment of her for being disabled and requesting reasonable accommodations constituted egregious willful, wanton or malicious conduct.

80.    As a result of Quest's conduct, Ms. Monaco has suffered economic and

emotional damages.

81.    As a result of Quest's conduct, Ms. Monaco has sustained past, present and future losses.

82.    As a result of Quest's conduct, Ms. Monaco has suffered emotional distress, humiliation and embarrassment.

83.    The discriminatory conduct of Quest against Ms. Monaco was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Quest.

84.    Upon information and belief, Quest has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Quest's conduct towards Ms. Monaco was a part of this pattern or practice.

WHEREFORE plaintiff Deborah Monaco respectfully prays for judgment in her favor and against Defendant Quest Diagnostics, Inc. in the form of an order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding her back pay in an amount yet to be determined; (3) awarding her front pay in an amount yet to be determined; (4) awarding her lost fringe benefits in an amount yet to be determined; (5) awarding her liquidated damages in an amount yet to be determined; (6) awarding her damages for emotional distress, humiliation and embarrassment; (7) awarding her the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting her claims of discrimination; (8) awarding her punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT II
## RETALIATION

85.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 84 above as though fully set forth herein.

86.    The defendant retaliated against Ms. Monaco due to her disabilities and her request for reasonable accommodations in an effort to force her back into an indefinite unpaid leave of absence.

87.    Ms. Monaco's indefinite unpaid leave of absence constituted a retaliatory practice in violation of the ADA.

88.    Ms. Monaco's indefinite unpaid leave of absence was not a reasonable accommodation.

89.    Ms. Monaco's disabilities and her request for reasonable accommodations were determining factors in Quest's retaliation and discrimination of Ms. Monaco.

90.    Quest was aware of the prohibitions against retaliation such that defendant's actions were willful, entitling plaintiff to an award of liquidated damages.

91.    As a direct and proximate result of defendant's actions in violation of the ADA, plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock options for which plaintiff seeks back pay.

92.    Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

93.    Quest's retaliation against Ms. Monaco was a direct and proximate result

of Ms. Monaco's disabilities and her request for reasonable accommodations under the ADA.

94.     Quest's refusal to provide Ms. Monaco with reasonable accommodations and its subsequent punishment of her for being disabled and requesting reasonable accommodations constituted egregious willful, wanton or malicious conduct.

95.     As a result of defendant's conduct, Ms. Monaco has suffered economic and emotional damages.

96.     As a result of Defendant's conduct, Ms. Monaco has sustained past, present and future losses.

97.     As a result of Quest's conduct, Ms. Monaco has suffered emotional distress, humiliation and embarrassment.

98.     The retaliatory conduct of the defendant against Ms. Monaco was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Quest.

99.     Upon information and belief, Quest has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Quest's conduct towards Ms. Monaco was a part of this pattern or practice.

WHEREFORE plaintiff Deborah Monaco respectfully prays for judgment in her favor and against Defendant Quest Diagnostics, Inc. in the form of an order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding her back pay in an amount yet to be determined; (3) awarding her front pay in an amount yet to be determined; (4) awarding her lost fringe benefits in

an amount yet to be determined; (5) awarding her liquidated damages in an amount yet to be determined; (6) awarding her damages for emotional distress, humiliation and embarrassment; (7) awarding her the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting her claims of retaliation; (8) awarding her punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT III
## CIVIL RIGHTS ACT

100.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 99 above as though fully set forth herein.

101.    Quest acting through its employees and agents discriminated and retaliated against Ms. Monaco on the basis of her disability.

102.    Quest acting through its employees and agents intentionally discriminated and retaliated against Ms. Monaco on the basis of her disability.

103.    Quest would not have treated and does not treat people that are not disabled in the same manner.

104.    Quest therefore deprived Ms. Monaco the full and equal benefits of all laws and proceedings that are enjoyed by citizens that are not disabled.

105.    Ms. Monaco has been damaged as a direct and proximate result of Quest's actions. In particular, she suffered injuries including, but not limited to, economic and emotional damages, past, present and future losses, lost income, emotional distress, anxiety, humiliation and embarrassment.

106.    Quest's actions were willful, wanton, reckless and malicious, and further showed a complete and deliberate indifference to, and conscious disregard for the rights of Ms. Monaco.

107.    Ms. Monaco is entitled to an award of punitive or exemplary damages in an amount sufficient to punish or to deter Quest and other companies from like conduct in the future.

108.    Ms. Monaco is entitled to recover from Quest her reasonable attorneys' fees, expert witness fees and other costs of litigation.

109.    Upon information and belief, Quest has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Quest's conduct towards Ms. Monaco was a part of this pattern or practice.

WHEREFORE, plaintiff Ms. Monaco prays this Court enter a judgment against Defendant Quest Diagnostics, Inc. for her actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for her reasonable attorneys' fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

## COUNT IV
## KANSAS ACT AGAINST DISCRIMINATION

110.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 109 above as though fully set forth herein.

111.    Quest acting through its employees and agents discriminated and retaliated against Ms. Monaco on the basis of her disability.

112.    On or about May 20, 2008, after conducting its investigation, the Kansas Human Rights Commission issued a Probable Cause determination finding that Quest had discriminated and retaliated against Ms. Monaco based upon her disabilities and her being regarded as having disabilities.   A true and correct copy of said Case Summary Report is attached hereto as Exhibit "C".

113.    Quest acting through its employees and agents intentionally discriminated and retaliated against Ms. Monaco on the basis of her disability.

114.    Quest would not have treated and does not treat people that are not disabled in the same manner.

115.    Quest therefore deprived Ms. Monaco the full and equal benefits of all laws and proceedings that are enjoyed by citizens that are not disabled.

116.    Ms. Monaco has been damaged as a direct and proximate result of Quest's actions. In particular, she suffered injuries including, but not limited to, economic and emotional damages, past, present and future losses, lost income, emotional distress, anxiety, humiliation and embarrassment.

117.    Quest's actions were willful, wanton, reckless and malicious, and further showed a complete and deliberate indifference to, and conscious disregard for the rights of Ms. Monaco.

118.    Ms. Monaco is entitled to an award of punitive or exemplary damages in an amount sufficient to punish or to deter Quest and other companies from like conduct in the future.

119.    Ms. Monaco is entitled to recover from Quest her reasonable attorneys' fees, expert witness fees and other costs of litigation.

120.    Upon information and belief, Quest has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Quest's conduct towards Ms. Monaco was a part of this pattern or practice.

WHEREFORE, plaintiff Ms. Monaco prays this Court enter a judgment against Defendant Quest Diagnostics, Inc. for her actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for her reasonable attorneys' fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

### COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

121.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 120 above as though fully set forth herein.

122.    The conduct of Quest was intentional or in reckless disregard for Ms. Monaco.

123.    The conduct of Quest was extreme and outrageous.

124.    The conduct of Quest caused Ms. Monaco extreme and severe emotional distress.

125.    As a direct and proximate result Ms. Monaco has been found to be medically unable to work and she had to claim disability; it also caused her to require counseling, therapy and hospitalization for, among other things, extreme anxiety, depression, paranoia, sleeplessness, racing thoughts, crying spells, overall decline in functioning, hopelessness and suicidal thoughts.

126.   The emotional distress caused by Quest's conduct was a direct and proximate cause of Ms. Monaco's injuries.

127.   The injuries of Ms. Monaco appeared within a short span of time after the emotional disturbances caused by Quest.

128.   The emotional distress suffered by Ms. Monaco was in such an extreme degree that the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it.

WHEREFORE, plaintiff Ms. Monaco prays for judgment against the Defendant Quest Diagnostics, Inc. in an amount in excess of $75,000.00 and prays further for her costs and such other and further relief as to the Court may seem just and equitable in the premises.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

129.   Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 128 above as though fully set forth herein.

130.   Quest had a duty to Ms. Monaco.

131.   Quest breached its duty to Ms. Monaco.

132.   The conduct of Quest caused Ms. Monaco extreme and severe emotional distress.

133.   As a direct and proximate result Ms. Monaco has been found to be medically unable to work and she had to claim disability; it also caused her to require counseling, therapy and hospitalization for, among other things, extreme anxiety,

depression, paranoia, sleeplessness, racing thoughts, crying spells, overall decline in functioning, hopelessness and suicidal thoughts.

134.    The emotional distress caused by Quest's negligence was a direct and proximate cause of Ms. Monaco's injuries.

135.    The injuries of Ms. Monaco appeared within a short span of time after the emotional disturbances caused by Quest.

WHEREFORE, plaintiff Ms. Monaco prays for judgment against the Defendant Quest Diagnostics, Inc. in an amount in excess of $75,000.00 and prays further for her costs and such other and further relief as to the Court may seem just and equitable in the premises.

## COUNT VII
## FAMILY MEDICAL LEAVE ACT

136.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 135 above as though fully set forth herein.

137.    Plaintiff was eligible for and entitled to the benefits under the FMLA.

138.    Plaintiff was deprived of the benefits she was entitled to under the FMLA.

139.    The Defendant was an "employer" as that word is defined at 29 U.S.C. §2611(4)(A)(i).

140.    The Defendant was a "person" as that word is defined at 29 U.S.C. §2611(8).

141.    The Defendant was at all times material hereto engaged in "commerce" or was engaged in an "industry or activity affecting commerce," as that word and phrase

are defined in 29 U.S.C. § 2611(1) and at 29 U.S.C. § 142(1) and (3), as made applicable by 29 U.S.C. § 2611(1).

142.    The Plaintiff was an "eligible employee" as that phrase is defined by 29 U.S.C. § 2611(2)(A)(i) and (ii).

143.    The Defendant interfered with, restrained and denied the exercise by the Plaintiff of her rights under 29 U.S.C. § 2611, et seq. in violation of 29 U.S.C. § 2615(a).

144.    The Defendant retaliated against the Plaintiff for taking leave that she was entitled to pursuant 29 U.S.C. § 2612(b).

145.    The Plaintiff provided the Defendant notice of the necessity for leave under 29 U.S.C. § 2612(e)(2)(B).

146.    Defendant willfully violated the FMLA and retaliated against the plaintiff when she returned after taking approved FMLA leave.

WHEREFORE plaintiff Deborah Monaco respectfully prays for judgment in her favor and against defendant Quest Diagnostics, Incorporated in the form of the order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding her back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding her lost fringe benefits in an amount yet to be determined; (5) awarding her liquidated damages in an amount in an amount yet to be determined; (6) awarding her damages for humiliation and embarrassment; (7) awarding her the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting her claims of

discrimination; (8) awarding her punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT VIII
## FMLA RETALIATION

147.    Plaintiff Deborah Monaco hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 146 above as though fully set forth herein.

148.    The defendant retaliated against Ms. Monaco due to her disabilities and for taking FMLA leave in an effort to force her back into an unpaid leave of absence.

149.    Ms. Monaco's indefinite unpaid leave of absence constituted a retaliatory practice in violation of the FMLA.

150.    Ms. Monaco's disabilities and her taking of FMLA leave were determining factors in Quest's retaliation and discrimination of Ms. Monaco.

151.    Quest was aware of the prohibitions against retaliation such that defendant's actions were willful, entitling plaintiff to an award of liquidated damages.

152.    Defendant willfully violated the FMLA and retaliated against the plaintiff when she returned after taking approved FMLA leave.

153.    As a direct and proximate result of defendant's actions in violation of the FMLA, plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock options for which plaintiff seeks back pay.

154.    Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

155.    Quest's retaliation against Ms. Monaco was a direct and proximate result of Ms. Monaco's disabilities and her taking FMLA leave under the FMLA.

156.    Quest's retaliation against Ms. Monaco for taking FMLA leave constituted egregious willful, wanton or malicious conduct.

157.    As a result of defendant's conduct, Ms. Monaco has suffered economic and emotional damages.

158.    As a result of Defendant's conduct, Ms. Monaco has sustained past, present and future losses.

159.    As a result of Quest's conduct, Ms. Monaco has suffered emotional distress, humiliation and embarrassment.

160.    The retaliatory conduct of the defendant against Ms. Monaco was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Quest.

161.    Upon information and belief, Quest has engaged in a pattern or practice of discrimination and retaliation against people that have requested to take or have taken FMLA leave, and Quest's conduct towards Ms. Monaco was a part of this pattern or practice.

WHEREFORE plaintiff Deborah Monaco respectfully prays for judgment in her favor and against defendant Quest Diagnostics, Incorporated in the form of the order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding her back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding her lost fringe benefits in

an amount yet to be determined; (5) awarding her liquidated damages in an amount in

an amount yet to be determined; (6) awarding her damages for humiliation and

embarrassment; (7) awarding her the costs and expenses, including, but not limited to,

attorneys' fees and expert witness' fees, incurred in prosecuting her claims of

discrimination; (8) awarding her punitive damages; and (10) awarding such other and

further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands trial by jury in Kansas City of all issues so triable as a matter of

right.

Respectfully submitted,

MCKEE & IRELAND, L.L.C.

/s/ Aaron C. McKee
Aaron C. McKee                                    KS# 20889
Kimberly J. Ireland                               KS# 22016
13480 Arapaho Drive, Suite 101
Olathe, Kansas 66062
(913) 768-6400
(913) 768-6420 – Facsimile
aaronmckee@mckee-law.com
kimberlyireland@mckee-law.com

**ATTORNEYS FOR PLAINTIFF DEBORAH MONACO**

## CERTIFICATE OF SERVICE

I certify that on the 26th day of June, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Richard J. Pautler
Robert H. Bernstein
Joyce M. Pratt
Thompson Coburn LLP
One US Bank Plaza – 28th Floor
St. Louis, Missouri
(314) 552-6000
(314) 552-7000 – Facsimile
rpautler@thompsoncoburn.com
rbernstein@thompsoncoburn.com
jpratt@thompsoncoburn.com

**ATTORNEYS FOR DEFENDANT**

/s/ Aaron C. McKee